HAGOP T. BEDOYAN, CSB NO. 131285
KURT D. VAN SCIVER, CSB NO. 263957
**KLEIN, DENATALE, GOLDNER,**
   **COOPER, ROSENLIEB & KIMBALL LLP**
5260 N. Palm Avenue, Suite 205
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile:  (661) 326-0418
E-mail: hbedoyan@kleinlaw.com
           kvansciver@kleinlaw.com

Attorneys for HealthCare Conglomerate Associates, LLC

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

| | |
|---|---|
| In re:<br><br>TULARE LOCAL HEALTHCARE DISTRICT dba TULARE REGIONAL MEDICAL CENTER,<br><br>                Debtor.<br>_____<br>TULARE LOCAL HEALTHCARE DISTRICT dba TULARE REGIONAL MEDICAL CENTER,<br><br>                Plaintiff,<br><br>v.<br><br>HEALTHCARE CONGLOMERATE ASSOCIATES, LLC a California limited liability company,<br>                Defendant. | Case No.: 17-13797-9-B<br><br>Chapter 9<br><br>**Adversary Pro. No.: 18-01005-B**<br><br>DC No. WW-1<br><br>**HEALTHCARE CONGLOMERATE ASSOCIATES, LLC'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT ON SIXTH CLAIM FOR DECLARATORY RELIEF**<br><br>Date:      August 15, 2018<br>Time:     1:30 p.m.<br>Place:     2500 Tulare Street<br>             Courtroom 13<br>             Fresno, CA 93721<br>Judge:    Honorable René Lastreto II |

**Table of Contents**

I. Introduction...................................................................................................................... 4

II. Facts ................................................................................................................................ 4

III. Standard on MSJ .............................................................................................................. 6

IV. Summary judgment should be denied because the District has not carried its burdens of persuasion and production. ................................................................................................ 7

V. Even if this Court concludes the District met its burdens, the MSJ should be denied because the MSA gave HCCA the authority to execute the deed of trust. ........................ 7

    A. The District's Bylaws establish the position of a CEO and manager to manage the District. ........................................................................................................................ 8

    B. The Bylaws are not the sole controlling document with respect to the execution of the deed of trust. ................................................................................................................. 8

    C. The MSA gave HCCA the authority to execute the deed of trust. ................................ 9

        1. The MSA appointed HCCA as the manager of the District. ...................................... 9

        2. The District authorized HCCA to execute any security instrument on behalf of the District—including deeds of trust. ............................................................................ 10

        3. The District's arguments demonstrate the existence of genuine issues of material fact regarding HCCA's exercise of the authority granted by the District. ......................... 11

    D. The District relies on numerous unsupported facts and assumptions............................ 12

VI. Conclusion. .................................................................................................................... 14

# Table of Authorities

**Federal Cases**

*Ambat v. City and County of San Francisco,* 757 F.3d 1017 (9th Cir. 2014) ............................... 6

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.* 210 F.3d 1099 (9th Cir. 2000) .................... 6, 7

*So. Cal. Gas v. City of Santa Ana* 336 F.3d 885 (9th Cir. 2003) ...................................................... 6

**California Cases**

*Aviel v. Ng*, 161 Cal.App.4th 809 (2008) ................................................................................. 11, 12

*Bank of Italy Nat. Trust & Saving Ass'n v. Bentley*, 217 Cal. 644 (1933) ............................ 11, 12

**Federal Statutes and Rules**

Fed. R. Civ. P., Rule 56 ................................................................................................................. 6

**California Statutes**

Cal. Civ. Code, § 2953.1 .............................................................................................................. 11

Cal. Com'l Code, § 9109 ............................................................................................................. 12

Civil Code sections 2947 *et seq.* ................................................................................................. 12

**Treatises and Other Authorites**

Miller & Starr, CAL. REAL ESTATE (4th ed. 2018), § 13.1 ........................................................... 11

## I. Introduction

Healthcare Conglomerate Associates, LLC ("Defendant" or "HCCA") opposes the Motion for Partial Summary Judgment on Sixth Claim for Declaratory Relief (the "Motion") filed by Tulare Local Healthcare District, dba Tulare Regional Medical Center ("Plaintiff" or "District") because the moving party failed to carry its burden under summary judgment law and because there are genuine issues of material fact.

First, the Motion does not carry the burden of persuasion or production. The Motion fails to show a lack of authority to execute a deed of trust, where the Management Services Agreement ("MSA") between the parties permitted HCCA to execute any financial instrument on behalf of the District, which would include a deed of trust.

Second, even if the Court concludes the District did meet its burdens, there are genuine issues of material fact. The parties dispute the scope of the authority granted to HCCA, which under the MSA includes and exceeds the authority given to the prior CEO. The District makes no effort to explain what that authority was and whether it included the power to issue a deed of trust. Moreover, the District acknowledges that HCCA had broad authority to execute security interests for the District but questions the capacity in which the deed of trust was executed by Yorai Benzeevi ("Benzeevi"). Thus, there is a genuine issue regarding Benzeevi's authority when he executed the deed of trust, making summary judgment inappropriate.

## II. Facts

This case centers on the District's hiring of a manager to operate the District after seven years of dismal leadership and operating losses.

From 2007 to 2014, the District employed six different Chief Executive Officers and more than six different Chief Financial Officers. The District lost over $16 million in the three fiscal years prior to 2014 and over $8 million in the fiscal year prior to 2014 alone. Declaration of Yorai (Benny) Benzeevi ("Decl. Benzeevi") ¶ 5.

The District needed new and effective leadership. In December 2013, after a year-long search, the District entered into a short-term management services agreement with HCCA,

effective January 2014. The District then entered into a long-term Management Services Agreement (the "MSA") with HCCA to be the exclusive manager and operator of the District, which included specifically the appointment by HCCA of a Chief Executive Officer. Under the MSA, approved by a 5-0 vote of the District's board, HCCA as manager would appoint an individual to serve as the denominated CEO. Decl. Benzeevi ¶ 6.

The MSA established a term of 15 years plus a renewal term of an additional 10 years. Under the terms of the MSA, HCCA had the authority to manage the District on a day-to-day basis. Yorai Benzeevi, M.D. ("Benzeevi"), the managing member of HCCA, has acted as CEO since 2015. During that time, the District's board never formally questioned Benzeevi's authority to act as CEO of the District. Since entering into the MSA, the District's board never formally or informally questioned HCCA's authority to appoint a CEO. Decl. Benzeevi ¶ 7.

HCCA's authority included the power to loan money to the District to cover necessary expenses if the District failed to provide sufficient funds to HCCA for operations. The MSA granted HCCA a security interest in all the District's assets to secure those funds. In particular, the MSA authorized HCCA to act as attorney-in-fact for the District and gave HCCA the power to execute any financial instrument necessary to secure its loans to the District, if such loans proved necessary. Decl. Benzeevi ¶ 8; MSA § 4(j)(i)(3).

And loans were required. From 2014 to 2017 HCCA loaned the District $10,233,950.05 (the "Loans") to cover expenses.[1] Decl. Benzeevi ¶ 9. On September 28, 2017, the District recorded a deed of trust in favor of HCCA to secure the Loans. Benzeevi signed the deed of trust on behalf of the District. Decl. Benzeevi ¶ 10.

The District's board membership changed several times during HCCA's tenure. At no time was the MSA or any of its components formally or informally challenged by the board. Decl. Benzeevi ¶ 11.

Immediately after the most recent change in membership on the District's board, the

---

[1] The total amount of loans and/or advances made to the District is greater than the Loans, as evidenced by the two proofs of claim filed by HCCA on April 10, 2018 as Claim Numbers 236 and 237; however, the deed of trust at issue only secures the Loans.

1 District abruptly and without notice declared bankruptcy. Decl. Benzeevi ¶ 12. In this adversary
2 proceeding, the District has raised a series of claims against HCCA, including, as relevant to
3 this Motion, a claim for a declaratory judgment that the deed of trust was not authorized. The
4 District has moved for partial summary judgment on the declaratory relief claim ("6th Claim")
5 alone.

6 **III.    Standard on MSJ**

7 To prevail on a motion for summary judgment, the moving party must show there is no
8 genuine dispute regarding any material fact and that the moving party is entitled to judgment as
9 a matter of law. Fed. R. Civ. P., Rule 56(a).   The moving party must show that a fact cannot be
10 disputed by citing to particular parts of the record or by showing that the material in the record
11 do not create a genuine dispute. *Id*., Rule 56(c)(1).

12 The moving party must meet the "heavy burden" of showing there are no genuine issues
13 of disputed fact. *Ambat v. City and County of San Francisco,* 757 F.3d 1017, 1031 (9th Cir.
14 2014). The moving party must establish that each element of its claim is beyond controversy.
15 *So. Cal. Gas v. City of Santa Ana* 336 F.3d 885, 888 (9th Cir. 2003). The nonmoving party can
16 defeat summary judgment by showing that the evidence could lead a rational trier of fact to find
17 in its favor. *Id*.

18 If the moving party fails to meet its burden of production, then the nonmoving party has
19 no obligation to produce anything in opposition. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
20 *Inc*. 210 F.3d 1099, 1102-03 (9th Cir. 2000).

21 The District moves for summary judgment on the 6th Claim. The District has the burden
22 of proving that Benzeevi lacked authority to sign the deed of trust. Because the District has
23 failed to satisfy its initial burden, HCCA is not obligated to provide any evidence in opposition
24 to the Motion. Moreover, a genuine issue exists because HCCA was given authority by the
25 District to execute the deed of trust and Benzeevi had the authority to sign the deed of trust.
26 / / /
27 / / /
28

3OP1005                                    6                HCCA'S OPP TO MTN FOR PARTIAL SUM JUDGMENT

### IV. Summary judgment should be denied because the District has not carried its burdens of persuasion and production.

Because the District has not proven that Benzeevi lacked authority to execute the deed of trust, the District has failed to meet its initial burden of persuasion and production. *Nissan Fire*, *supra*, 210 F.3d at 1102-03

The District relies on a cursory review of its own board minutes to attempt to satisfy its initial burden. Yet, it acknowledges it entered into a wide-ranging contract (i.e., the MSA) with HCCA that gave HCCA broad authority to execute documents on the District's behalf, including deeds of trust.

The District contends that the District did not specifically give Benzeevi authority to sign the deed of trust. However, the District does not produce any evidence that Benzeevi could not execute the deed of trust under HCCA's authority as provided under the MSA. Accordingly, the District has not produced sufficient evidence that would satisfy its initial burden of production and its ultimate burden of persuasion.

Because the District has not satisfied its burden, HCCA is not obligated to produce any evidence to demonstrate the existence of a genuine issue of material fact. The Court may deny the Motion on this basis alone.

Even were the Court to conclude the District satisfied its initial burden, HCCA can show the existence of a genuine issue of material fact as to Benzeevi's authority to sign the deed of trust. The MSA gave HCCA the authority to sign the deed of trust and Benzeevi signed under that authority.

### V. Even if this Court concludes the District met its burdens, the MSJ should be denied because the MSA gave HCCA the authority to execute the deed of trust.

If the Court requires HCCA to demonstrate the existence of a genuine issue of material fact, then the Court should still deny the Motion. The District's Bylaws give it the authority to appoint a chief executive officer and manager with the authority to enter into financial transactions. In accordance with the Bylaws, the District then hired HCCA to serve as the

manager of the District. The MSA gave HCCA the explicit authority to name a CEO for the District and to execute financial documents on behalf of the District, including the deed of trust.

### A. The District's Bylaws establish the position of a CEO and manager to manage the District.

The District's Bylaws provide that the District shall appoint an administrator to serve as chief executive officer and manager of the District. Bylaws, art. VI, § 1(a). The CEO has the ultimate operational authority for day-to-day management of the District, subject only to policies of the District's board. Bylaws, art. VI, § 1(c).

This broad grant of authority to the CEO includes acting as the duly authorized representative on of the Board of Directors on all matters that the board has not granted to another. Bylaws, art. VI, § 1(d).

The CEO is granted a set of specific duties and authorities, including conservation of the physical and financial assets of the District. Bylaws, art. VI, § 2(3). The CEO has the power to supervise all business affairs and financial transactions for the District. Bylaws, art. VI, § 2(7). He may also perform all duties delegated by the board of the District. Bylaws, art. VI, § 2(13).

With respect to agreements and financial instruments, the President of the District's board may execute documents as directed by the board. Bylaws, art. IV, § 2(c). The Treasurer of the District's board has the authority to sign checks for the District. Bylaws, art. IV, § 5(a). In addition, the board may designate any person or persons to execute financial instruments on behalf of the District. Bylaws, art. IV, § 5(b).

### B. The Bylaws are not the sole controlling document with respect to the execution of the deed of trust.

There is an inconsistency between the facts set forth in the Separate Statement of Undisputed Facts (the "Separate Statement") and those set forth in the Motion. In the Separate Statement, the second alleged undisputed fact is that "The Tulare Local Healthcare District is a

public local healthcare district organized under the Local Hospital District Law set forth in California's Health and Safety [*sic*]."

On the other hand, the Motion lists as the second undisputed fact the following: "The District adopted and is governed by its Bylaws." Motion at 13:24. The Motion then uses that alleged fact to make its argument in the memorandum of points and authorities. But the District fails to include that alleged fact in its Separate Statement. For that reason, the Motion should be denied.

Moreover, there is a genuine issue regarding the District's second undisputed fact in the Motion, since the Bylaws alone do not control the issue of authority to execute a deed of trust. Here, the District also entered into the MSA, which specifically states that to the extent the MSA and Bylaws conflict, the MSA will govern. MSA § 3(a). Accordingly, when determining the authority given to HCCA, the MSA controls.

**C. The MSA gave HCCA the authority to execute the deed of trust.**

By the terms of the MSA, the District gave HCCA broad authority to execute the deed of trust. The arguments raised by the District demonstrate the existence of genuine issues of material fact.

*1. The MSA appointed HCCA as the manager of the District.*

The Motion states that HCCA was only the manager of the "Hospital" and not the District. Motion at 18:23-26. This statement is untrue.

The recitals to the MSA state that "the District desires to engage [HCCA] . . . to manage the operations of the District." MSA, recitals, p.1. The MSA further states that "The District hereby engages and appoints [HCCA], and [HCCA] hereby accepts such engagement, to exclusively provide day-to-day management services to and for the District with respect to the Hospital and the Clinics and Other Facilities." MSA § 3(a).

/ / /

/ / /

/ / /

The MSA provides that HCCA would provide management to the District. Included within the management of the District was management of the Hospital as well as the "Clinics and Other Facilities," which were defined to include 11 other locations. MSA § 1(j), Ex. A. HCCA was not hired to simply manage the Hospital.

Accordingly, the assertion that HCCA was solely engaged to manage the Hospital as opposed to the District is not true.

2. *The District authorized HCCA to execute any security instrument on behalf of the District—including deeds of trust.*

Under the terms of the MSA, the District engaged HCCA to "exclusively provide day-to-day management services to and for the District with respect to the Hospital and the Clinics and Other Facilities." MSA § 3(a). HCCA's services were to be performed in accordance with the District's Bylaws. *Id*. However, to the extent the MSA conflicted with the Bylaws, ***the MSA would control***. *Id*., emphasis added.

The MSA thus installed HCCA as the manager of the District, responsible for its day-to-day operations and reporting to the Board. And the MSA gave HCCA the power to designate an individual as CEO. MSA § 4(a)(i). The CEO's authority "shall be at least as extensive as the authority the District delegated to the District's former chief executive officer (as of the end of 2013)." *Id*.

HCCA was authorized to advance money for the District if the District's board failed to advance funds required to operate the District. MSA § 4(j)(i)(1). If HCCA advanced funds, the MSA constituted a security agreement in favor of HCCA. MSA § 4(j)(i)(2).

Critically, the MSA authorized HCCA to act as the attorney-in-fact for the District, "with full power to prepare and execute <u>any</u> documents, instruments and agreements, including, but not limited to, any note evidencing the advance or loan and any Uniform Commercial Code financing statements, continuation statements <u>and other security instruments</u> as may be appropriate to perfect and continue its security interest in favor of [HCCA]." MSA § 4(j)(i)(3), emphasis added.

This last provision gave HCCA the power to execute *any security interest*, which would include the deed of trust. Accordingly, the MSA gave HCCA, through its appointed CEO Benzeevi, the authority to execute and record the deed of trust to perfect its security interest and secure its loans on behalf of the District.

> *3. The District's arguments demonstrate the existence of genuine issues of material fact regarding HCCA's exercise of the authority granted by the District.*

The District contends that HCCA did not act as attorney-in-fact when executing the deed of trust. Whether or not HCCA acted as attorney-in-fact constitutes a disputed issue of material fact. This dispute thus demonstrates that the Court should deny the Motion.

In effect, the District argues that since HCCA did not write the phrase "attorney in fact" after Benzeevi's name on the deed of trust, HCCA's authority was nullified. In short, the District argues that without "magic words" after Benzeevi's name, the entire execution of the deed of trust was invalid.

This argument elevates form over substance. HCCA had the authority to execute the deed of trust and did so. At most, this argument demonstrates the existence of a genuine issue of material fact regarding whether the deed of trust was executed pursuant to the power of attorney granted in the MSA.

The District also argues that HCCA did not have authority to execute a deed of trust because the MSA does not use the phrase "deed of trust." However, the MSA gives HCCA broad authority to execute any security instrument, which includes a deed of trust. *See, e.g.*, Cal. Civ. Code, § 2953.1, subd. (a) (defining a "real property security instrument" as, among other things, a "trust deed . . . in or on real property"). As one treatise explains, a mortgage with a power of sale "has the same legal effect and economic function as a deed of trust." Miller & Starr, CAL. REAL ESTATE (4th ed. 2018), § 13.1. "Many years ago, our Supreme Court held that the function and purpose of deeds of trust and mortgages are identical." *Aviel v. Ng*, 161 Cal.App.4th 809, 816 (2008), citing *Bank of Italy Nat. Trust & Saving Ass'n v. Bentley*, 217 Cal. 644, 657 (1933). The deed of trust passes title to the trustee, "solely for the purpose of

1　security." *Id*.

2　　　The District claims that the MSA simply gives HCCA the power to file a Uniform
3　Commercial Code financing statement alone. Motion at 20:10-26. The MSA refers to a
4　Uniform Commercial Code financing statement, but explicitly states that the type of security
5　instrument is not limited to a UCC statement. MSA § 4(j)(i)(3). The plain language goes
6　beyond a UCC statement—broadly defining various documents and using the phrase "security
7　instrument"—which encompasses a deed of trust. And in this regard, the District's attempt to
8　limit the power to UCC statements does not make sense because the requirements for filing
9　statements under the Uniform Commercial Code do not apply to transfers by a governmental
10　unit. Cal. Com'l Code, § 9109(d)(17). According to the District, the only option for HCCA to
11　secure its loans to the District was to file a UCC filing statement that it did not need to file.

12　　　Finally, the District argues the collateral description in the MSA was insufficient to
13　support the recording of a deed of trust under the California Commercial Code. Motion at 21:6-
14　22:24. But this argument is irrelevant because the cited provisions do not apply to a deed of
15　trust. Cal. Com'l Code, § 9109(d)(11). Instead, deeds of trust are governed by Civil Code
16　sections 2947 *et seq.*, addressing mortgages and deeds of trust.

17　　　Accordingly, the broad scope of the authority granted to HCCA permitted the execution
18　of the deed of trust.

19　　　**D.  The District relies on numerous unsupported facts and assumptions.**

20　　　The District includes a long narrative—occupying 13 out of 23 pages—most of which is
21　unsubstantiated, baseless, and irrelevant to the Motion. Perhaps the District believes that if it
22　inserts those asserted "facts" into every introduction of every motion filed in this Court,
23　somehow, they will become real facts. The following five unsupported and false statements
24　should be stricken and not considered by the Court.

25　　　First, the District claims that Alan Germany was the Chief Operating Officer and Chief
26　Financial Officer for HCCA. That is not true. Mr. Germany was a consultant both for HCCA
27　and the District but was never an employee of either entity. He was certainly never the CFO or

28

COO of HCCA. Declaration of Alan Germany ("Decl. Germany") ¶ 4. Instead, Mr. Germany contracted directly with the District (dba Tulare Regional Medical Center ("TRMC")) in August 2014 and, as an independent contractor, served as Interim Chief Financial Officer of the Tulare Regional Medical Center ("TRMC"). Decl. Germany ¶ 5. In February 2015, Mr. Germany contracted with HCCA to serve as CFO and COO of TRMC (not HCCA). In January 2016, his contract with HCCA was extended through January 2019. Decl. Germany ¶ 6.

Second, the District includes speculation about what Mr. Germany "believed" and "perceived." Because the District cannot peer into Mr. Germany's soul, these statements are unsupported speculation and not appropriate evidence. For example, the Motion states that Mr. Germany perceived that the election of two board members would be adverse to his economic interest. Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("District's Memo") at 4:17-19. This statement is false, as Mr. Germany had a consulting agreement with HCCA. As another example, the Motion states that Mr. Germany perceived that the recall of Dr. Kumar would result in more transparency. District's Memo at 4:19-5:2. There is no basis for this statement. In fact, Mr. Germany provided substantial detail in board meetings regarding the financial condition of TRMC. Decl. Germany ¶ 7.

Third, the Motion states that Mr. Germany pursued financing despite knowing that the board had voted to rescind HCCA's authority in that respect. District's Memo at 9:14-17. However, when pursing financing for the District, Mr. Germany acted according to the directions of the District's board, which had directed HCCA to pursue financing. Decl. Germany ¶ 8. Mr. Germany acted on the advice of counsel that the new board member had not been seated and hence her actions were of no effect. Decl. Germany ¶ 8. The Motion quotes an e-mail written by Mr. Germany and contends that he believed certain things to be true; again, the District has no foundation for claiming what Mr. Germany believed and perceived to be true.

Fourth, the Motion uses terms like "orchestrate" to imply that HCCA and Mr. Germany were engaged in improper acts. District's Memo at 9:26-10:6. However, this histrionic use of

1  language is unwarranted and not supported by the facts. The board of the District had directed
2  HCCA to pursue financing and the board had not rescinded that directive in a lawfully
3  convened meeting with a quorum of seated board members. Decl. Germany ¶ 8.
4       Fifth, the Motion implies that Mr. Germany knowingly gave the wrong address – 869
5  Cherry Street – for Tulare Asset Management. District's Memo at 10:23-11:3. This is false.
6  When Mr. Germany provided Celtic Leasing Company with the address of 869 Cherry Street,
7  Tulare, CA 93274 as the address for Tulare Asset Management, he believed that was the
8  correct address and, on that basis he provided it. Decl. Germany ¶ 9.
9       Because the District relies on speculation and false statements, the Court should strike
10 those unsupported claims and not consider them in evaluating the Motion. The fast-and-loose
11 playing with the facts by the District demonstrates that their arguments are not reliable.

## VI. Conclusion.

The Court should deny the Motion. The District has failed to meet its burdens of production and persuasion and therefore HCCA is not required to produce evidence of a genuine issue of material fact.

Moreover, the evidence demonstrates that genuine issues of material fact exist regarding the scope of the authority granted to HCCA under the MSA. Indeed, the MSA terms cited by the District in its own Motion indicate that HCCA had the authority to execute a deed of trust in its favor on behalf of the District. Accordingly, even if the Court requires HCCA to demonstrate a genuine issue of material fact exists, the evidence shows that this matter should go to trial and should not be decided on summary judgment.

KLEIN, DENATALE, GOLDNER, COOPER,
ROSENLIEB & KIMBALL LLP

Dated: 7/25/18         By: _____
                          HAGOP T. BEDOYAN, ESQ.,
                          Attorneys for HealthCare Conglomerate Associates, LLC